## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMSON KANLA ORUSA,<br>Petitioner | : | No. 3:25-CV-0004 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| J. GREENE,<br>Respondent | : | |

### MEMORANDUM

Petitioner Samson Kanla Orusa initiated the above-captioned action by filing a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. He alleges that the Federal Bureau of Prisons (BOP) violated his due process rights during disciplinary proceedings and that the punishment imposed was capricious and retaliatory. For the following reasons, the court will deny Orusa's Section 2241 petition.

## I.  BACKGROUND

Orusa is currently serving an 84-month sentence imposed by the United States District Court for the Middle District of Tennessee for health care fraud. See United States v. Orusa, No. 3:18-CR-00342-1, Doc. 393 (M.D. Tenn. Aug. 24, 2023); (Doc. 13-3 at 3). His current projected release date is March 30, 2029. (Doc. 13-3 at 3).

On March 19, 2024, while incarcerated at FCI Allenwood Low, Orusa had his property confiscated during a "mass shakedown" of his housing unit. (Doc. 13-5 at 2). Orusa was found to be in possession of 120 Mirabegron ER 50 mg tablets.[1] (Id.) According to the incident report, this prescription medication was supposed to be taken once daily, and therefore Orusa "should have no more than 33 pills of this medication in his possession." (Id.) The incident report further alleged that Orusa knowingly requested refills of this medication in November 2023, December 2023, February 2024, and March 2024 despite having an "excessive amount of the prescribed medication" on hand. (Id.) He was charged with Code 218 – Destroying Property with a Value Over $100, Code 302 – Misuse of Authorized Medication, and Code 313 – Lying or Providing a False Statement to a Staff Member. (Id.)

Orusa was given a copy of the incident report later that afternoon and advised of his rights. (Id. at 4). At that time, he did not make a statement and did not request a witness, staff representative, or camera review. (Id.)

When appearing before the Unit Discipline Committee (UDC) for the alleged infractions, Orusa explained,

---

[1] Mirabegron ER is used to treat the symptoms of overactive bladder, helping to control incontinence, a strong need to urinate, and frequent need to urinate. See MAYO CLINIC, Mirabegron (oral route), https://www.mayoclinic.org/drugs-supplements/mirabegron-oral-route/description/drg-20075675 (last visited Sept. 2, 2025).

2

> I am a physician and what I did here is what I've done in the past. I've always not taken all of my medication. I didn't know I couldn't refill the medication if all of them weren't completed. I didn't take all of them because there were side effects and I was working with my [Physician's Assistant] to adjust my meds. I still intended to use the medication because I still need them.

(Id. at 3). Based on the severity of the charges, the UDC referred the incident to a Discipline Hearing Officer (DHO) for a hearing. (Id.) The UDC recommended that, if Orusa were found to have committed the prohibited acts, the punishment should be "loss of telephones and commissary." (Id.)

On March 26, 2024, Orusa was given a formal copy of the Notice of Discipline Hearing before the (DHO), form BP-A0294. (Doc. 13-6 at 2). That document provided Orusa with the alleged disciplinary violations and their code numbers, gave him the opportunity to request a staff representative (which Orusa opted to have), and informed him of his right to call witnesses. (Id.) Orusa marked that he did not wish to have witnesses. (Id.) Orusa was additionally provided with a written copy of his rights at a discipline hearing. (Id. at 3). Orusa signed both forms. (See id. at 2, 3).

The discipline hearing was held on April 4, 2024. (See Doc. 13-7). At the hearing, Orusa denied the charges and explained, "My medication was too strong and it was interacting with other medications I was taking at the same time. I stopped taking my prostate medication because it was affecting my blood

3

pressure medication. I intended to start using it again at some point, I just didn't want to take it with my blood pressure medicine." (Id. at 1).

The DHO, relying on Orusa's statements and the incident report, found Orusa had committed the prohibited act of "misuse of authorized medication," but dropped the other two charges. (Id. at 3-4). The DHO sanctioned Orusa with disallowance of 14 days' good conduct time, 15 days' disciplinary segregation, and loss of commissary and phone privileges for six months. (Id. at 4).

Orusa administratively appealed the DHO's determination to the Regional Director and then to the BOP's Central Office. (See Docs. 1-4, 1-5, 1-7, 1-8). After exhausting administrative remedies, he filed the instant Section 2241 petition in this court. (See generally Doc. 1). He seeks restoration of the good conduct time as well as compensation for the discipline he has already served. (Id. at 7). Orusa's petition is fully briefed and ripe for disposition.

## II.    DISCUSSION

Orusa asserts three challenges to his disciplinary proceeding. He claims that (1) he did not violate Code 302 and that the charge interfered in his medical care; (2) he was denied the opportunity to present a witness; and (3) the sanctions were capricious and retaliatory. None of his arguments warrants habeas relief.

4

### 1.    Whether Orusa Violated Code 302

Orusa's first argument appears to challenge the sufficiency of the evidence. He maintains that he did not take his medications because they were causing "side effects" including "severe dizziness and almost passing out." (Doc. 1-1 at 1). He asserts that they are not narcotic or habit-forming medications, have no "street value," and were not close to expiring. (Id. at 1-2). He further contends that he was never informed by his medical provider that he was violating BOP regulations by intentionally not taking his medications due to the side effects he was experiencing. (Id. at 1).

When an inmate challenges the sufficiency of the evidence in a prison disciplinary proceeding that resulted in the loss of good conduct time, "the requirements of due process are satisfied if *some evidence* supports the decision" to revoke good-time credits. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985) (emphasis added). Determining whether this standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. Rather, the relevant inquiry for the court is whether there is "any evidence in the record that could support the conclusion" reached by the decisionmaker. Id. at 455-56; see also Denny v. Schultz, 708 F.3d 140, 144 (3d Cir. 2013) ("[T]he 'some evidence' standard is a standard of appellate review to be applied by the

district court rather than a burden of proof in a prison disciplinary proceeding." (citation omitted)).

Orusa contends that he stopped taking some of his medications because he was experiencing side effects from them and that is why he had accumulated excess Mirabegron ER tablets.  However, the medical records he attached to his petition discuss only reported side effects and voluntary cessation of his blood pressure medication, Amlodipine.  (See generally Doc. 1-9).  Nowhere in any of his medical records does it indicate that Orusa reported that he was suffering side effects from his bladder medication, Mirabegron ER, or had stopped that medication because of these side effects.  (See id.).  In fact, the records Orusa provided contain only a single mention of Mirabegron ER (under its brand name "Myrbetriq") but say nothing of it causing side effects or that Orusa had stopped taking it.  (See id. at 6).  Thus, while Orusa maintains that the DHO violated his rights by failing to consider his medical history and his medical records, Orusa has not properly explained or supported how those records would have convinced the DHO to reach a different conclusion as to the finding of misuse of Mirabegron.

On habeas review, district courts do not reexamine the entire record, determine the credibility of witnesses, or reweigh the evidence.  Rather, the singular question this court must answer is whether there was any evidence in

the record that could support the DHO's conclusion that Orusa committed the charged act of misuse of authorized medication. The court must answer that question in the affirmative. In particular, the DHO relied on the incident report, wherein it was noted that Orusa was found to be in possession of 120 Mirabegron ER tablets and had consistently refilled this medication in the preceding months despite having a more-than-sufficient supply in his possession. Thus, there is "some evidence" that Orusa misused his authorized medication and his sufficiency-of-the-evidence challenge fails.

### 2.    Alleged Denial of Witness

Inmates retain certain procedural due process rights in prison disciplinary proceedings, although these rights "may be curtailed by the demands and realities of the prison environment." Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974)). Wolff v. McDonnell enumerates those protections and requires, at minimum, (1) the right to appear before an impartial decision-making body; (2) written notice of the charge(s) at least 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence (so long as the presentation of such evidence is not "unduly hazardous to institutional safety or correctional goals"); (4) if the inmate is illiterate or complex issues are involved, assistance from another inmate or a staff member; and (5) a written decision by

7

the factfinder setting forth the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 563-70 (citations omitted).

Orusa contends that, while he originally declined a witness for the UDC proceeding, he wanted to have a witness at his DHO hearing and was denied that right.  Respondent counters that the DHO report plainly indicates that Orusa waived his right to have a witness at the hearing.  (See Doc. 13-7 at 3).  Orusa claims that the DHO report is inaccurate.

The court need not delve into this factual dispute.  Orusa's due process argument fails because he has not proffered any explanation or support regarding what exculpatory evidence his purported witness would have provided and why it is relevant to his claim.  He does not even identify who the proposed witness was.[2]  See Crosby v. Warden Lewisburg USP, 788 F. App'x 816, 818 (3d Cir. 2019) (nonprecedential) (finding no due process violation when petitioner failed to identify witnesses or establish their ability to testify and failed to explain relevance of their proposed testimony); Pappas v. Allenwood, 548 F. App'x 31, 34 (3d Cir. 2013) (nonprecedential) (noting that petitioner failed to show prejudice from absence of witness, as witness's proposed testimony "would not necessarily negate the DHO's conclusion" on disciplinary charge).  Accordingly, Orusa has

---

[2] From his administrative remedy documents, it appears that Orusa intended to call an inmate witness.  (See Doc. 1-7 at 2).  However, not even Orusa's administrative remedy documents identify the alleged witness or explain the relevance of the proposed witness's testimony.

8

not established a constitutional violation with respect to the failure to call an unidentified witness.

### 3.    Alleged Capricious Punishment

Orusa's final argument is that the punishment ordered by the DHO was "capricious and retaliatory." This argument also misses the mark.

Orusa was sanctioned with 14 days' disallowance of good conduct time, 15 days' disciplinary segregation, and loss of commissary and telephone privileges for six months. These sanctions fall within the permissible range for a Code 302 offense. See 28 C.F.R. § 541.3. Indeed, as the DHO noted, the disallowance of 14 days' good conduct time is mandatory punishment for a prisoner sentenced under the PLRA who commits a Level 300 ("Moderate Severity") offense. See 28 C.F.R. § 541.4(b)(3); (Doc. 13-7 at 4). Accordingly, Orusa has not established that the punishment he received violated the relevant regulations, much less the constitution.

## III.    CONCLUSION

Based on the foregoing, the court will deny Orusa's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

Date: _9/2/25_

BY THE COURT:

**JUDGE JULIA K. MUNLEY**
**United States District Court**

9